**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JANE DOE,**

                    **Plaintiff,**

      v.                                               **1:19-CV-456
                                                            (TJM/ATB)**

**YMCA OF NORTHEASTERN NY, and DOZER BLAZE
PROPERTIES, LLC, f/k/a DOBER BLAZE PROPERTIES,
LLC,**

                    **Defendants.**
_____

**Thomas J. McAvoy,
Sr. U.S. District Judge**

## DECISION & ORDER

      Defendants have filed motions to dismiss this action. See dkt. #s 18, 30. They argue that the Court lacks subject matter jurisdiction over this matter, and that Plaintiff has failed to state a claim upon which relief could be granted. The parties have briefed the issues and the Court has determined to decide the matter without oral argument.

**I.    BACKGROUND**

      This case concerns Plaintiff Jane Doe's[1] claims that she suffered housing discrimination from Defendants YWCA of Northeastern New York and Dozer Blaze Properties, LLC. See Complaint ("Complt."), dkt. # 1. Plaintiff alleges that her spouse made a death threat on September 25, 2017. Id. at ¶ 4. She contends that the

---

[1]Magistrate Judge Andrew T. Baxter granted Plaintiff's motion to proceed using a pseudonym on May 14, 2019. See dkt. # 9.

1

Defendants "impermissibly requir[ed]" that she "[accept] . . . harassment and discrimination as a condition of" remaining in her apartment. Id. According to Plaintiff's Complaint, the Defendant YWCA receives federal funding to provide permanent, supportive housing for people with disabilities. Id. at ¶ 5. Defendant Dozer Blaze Properties owns the apartment where Plaintiff resided. Id.

Plaintiff filed a pro-se Complaint form on April 18, 2019 containing three claims. On the same day she filed her Complaint, Plaintiff filed a motion seeking a preliminary and permanent injunction, a declaratory judgment, and damages for violating the Fair Housing Act and the Violence Against Women Act. See dkt. # 2.

The Court denied this motion on April 19, 2019. See dkt. # 6. The Court found that the Anti-Injunction Act prevented the court from enjoining a state-court eviction proceeding. Id. at 5. The Court denied Plaintiff's motion without prejudice relative to other grounds for injunction, finding that Plaintiff–proceeding *pro se*–had not followed the necessary procedure to obtain either an Order to Show Cause or a preliminary injunction. Id. at 6. Plaintiff then filed another motion on April 23, 2019, seeking a preliminary injunction. See dkt. # 7. She sought an injunction on the state-court eviction proceedings. Id. The Court denied that motion as well, finding that the Anti-Injunction Act barred interference with the ongoing state-court eviction proceeding. Id. at 2. The Court also noted that the Rooker-Feldman doctrine barred the Court from acting as an appeal board for any lower-court decision. Id. at 2.

After the Plaintiff served the Complaint, each of the Defendants filed motions to dismiss. See dkt. #s 18, 30. Plaintiff has not responded to either motion. The motions to dismiss do not treat Plaintiff's initial filing as the operative Complaint, but instead make

arguments based on Plaintiff's second filing, which the Court addressed in denying Plaintiff's preliminary injunction motion. That document is titled "Complaint for Preliminary and Permanent Injunction; Declaratory Judgment; and Damages for violation of the Fair Housing Act; VAWA 2013's Housing Statute–34 U.S.C. § 12491 VAWA Confidentiality Provision 34 U.S.C. § 12291(b)(2)." The Court will interpret this document as an Amended Complaint, since Plaintiff would have a right to amend her initial Complaint under these circumstances. See FED. R. CIV. P. 15(a).

Plaintiff's Amended Complaint alleges violations of various rights. See Amended Complaint, dkt. # 2. Plaintiff alleges that she brings this action "against the YMCA of Northeastern NY, a federal grantee of Supportive Housing For Persons with Disabilities, and Dozer[2] Blaze Properties, LLC, majority owners of apartments rented by the YWCA under a scattered-site leasing model." Id. at ¶ 1. Plaintiff asserts that Defendants, "with malicious intent . . . imposed discriminatory practices that included 20 months of hostile environment harassment in my apartment beginning on September 26, 2017" after her spouse threatened her life. Id. Such conduct, she claims, violates the Fair Housing Act's ("FHA") prohibition on discrimination based on race, religion, sex, national origin, family status, or disability. Id. Plaintiff also alleges that Defendants "collaborat[ed] to remove [her] from [her] housing" and "to deny a new lease for" her home after the death threat. Id. at ¶ 2. They fabricated information to undermine her ability to maintain her residency in the property, all in an effort to deny her housing because of her spouse's threat. Id. That conduct violated the Violence Against Women Act ("VAWA"), she claims. Id.

---

[2]Plaintiff misspells "Dozer" and "Dober" throughout her Amended Complaint. The Court will correct that error when relating the allegations.

3

Defendant asserts that she "bring[s] this action against the YWCA of Northeastern NY, and Dozer Blaze Properties LLC for authorizing a 60-day eviction notice on August 1, 2018 when my third party housing funds ended." Id. at ¶ 3. As an immigrant survivor of abuse "in hiding," Plaintiff claims, she is permitted under federal regulations to receive housing. Id. She alleges that "an Albany (New York) based abuse shelter's Rapid Rehousing Program (RRP) paid for [her] housing from August 19, 2016 to July 31, 2018." Id. Despite knowing that Plaintiff received this assistance, "the YMCA authorized, filed, and pursued a second action to evict [Plaintiff] on behalf of Dozer Blaze Properties, LLC, on November 13, 2018, which ended in a dismissal on December 18, 2019." Id. The Defendants then "contrived a third eviction notice ending March 31, 2019" and filed an eviction petition to be heard in April of that year in Schenectady County, New York. Id.

Plaintiff further alleges that the Defendant YWCA shared her confidential information with Melissa Loeber of Dozer Blazer Properties, permitting "Loeber to know how to target [her] possessions." Id. at ¶ 4. Plaintiff claims that this action permitted Loeber to begin a campaign of "stalking" and "psychological terrorism" against Plaintiff. Id. Plaintiff alleges that she shared information with YWCA employees about her past abuse in a "confidential setting," and that release of such information violated the VAWA. Id. at ¶ 5. Rather than protect her, Plaintiff claims, YWCA employees "allowed Melissa Loeber to act as an enforcer for the YWCA" and "began stealth stalking activities that morphed into brazen acts of harassment." Id. at ¶ 6. The activities about which Plaintiff complains included Loeber rearranging furniture in her apartment, damaging clothing, removing hangars from closets, and damaging property such as printers and a fax machine. Id. Plaintiff also alleges that Loeber damaged her apartment and her personal property and

4

engaged in other destructive and harassing behavior.  Id.  Loeber also allegedly entered the apartment without permission or warning.  Id. at ¶ 7.  The YWCA's Director of Women and Family Services, Lauren Jarrad, told Plaintiff in a January 24, 2019 email that the only way she could escape Loeber's mistreatment would be to leave her apartment.  Id. at ¶ 6.

Plaintiff claims she contacted the Schenectady Police Department about this conduct three times.  Id. at ¶ 8.  After those visits, she alleges, officers told her to contact the Department of Housing and Urban Development ("HUD").  Id.  Plaintiff contacted the agency and her United States Senators about this conduct; their responses, she contends, were unsatisfactory.  Id. at ¶¶ 10-13.

Meanwhile, Plaintiff claims, the YWCA continued to ignore federal regulations.  Id. at ¶ 15.  Plaintiff claims that the YWCA stopped offering her services in June of 2018, even though regulations required that the YWCA provide such services until a court ordered an eviction.  Id.  The YWCA also continued to permit Loeber to enter her apartment.  Id.  Rather than assisting her in preventing such harassment, the YWCA wrote to Plaintiff's attorney to inform her that she was residing illegally in her apartment and would have to pay rent.  Id. at ¶ 16.  Plaintiff claims that the YWCA had provided housing for a South American immigrant who was a victim of domestic abuse for four years but refused to provide the same assistance to her.  Id. at ¶ 18.  Plaintiff is "a Black, English speaking immigrant survivor from a former British Colony."  Id.  Despite receiving funding to aid survivors of domestic abuse, Plaintiff claims, the YWCA did nothing "to protect or aid" Plaintiff.  Id. at ¶ 19.  Plaintiff alleges that an attorney assigned to her case by Legal Aid of Northeastern New York spent 60 hours investigating her case and concluded that "the YWCA was not compliant with state or federal laws; that they were retaliatory; and

had developed a housing program that ignored HUD regulations, as well as due process and civil rights laws." Id. at ¶ 21.

Plaintiff further claims that, after a court refused to evict Plaintiff on December 18, 2018, Defendants "employed another strategy to remove [her] from [her] home." Id. at ¶ 26. On January 29, 2019, she claims, "Homeland Security Agents were sent to my residence based on a false tip." Id. Agents quickly discovered that she was authorized to remain in the United States as "a credible Violence Against Women Act (VAWA) Petitioner awaiting my social security number and work permit." Id. Agents advised her to contact the New York State Attorney General about her housing circumstances. Id. The Attorney General eventually recommended that Plaintiff pursue a claim in federal court with the assistance of Legal Aid. Id. at ¶¶ 27-28. Legal Aid eventually declined to take the case, and Plaintiff determined to file her action *pro se*. Id. at ¶ 29.

Plaintiff's Amended Complaint lays out federal laws and regulations related to prohibitions on discrimination in housing for victims of domestic violence. Id. at ¶¶ 34-51. She contends that YWCA "housing administrators" failed to observe these rules and regulations in her case. Id. at ¶ 43. The YWCA's Executive Director, Kim Siciliano, she alleges, "refused to acknowledge or discuss any rights" Plaintiff had under the VAWA housing statute or the Fair Housing Act. Id. at ¶ 44. Plaintiff also describes the ways that various housing facilitated by the YWCA was inferior or dangerous. Id. at ¶¶ 53-55. She further alleges that the YWCA failed to help her find an attorney to help her with immigration issues. Id. at ¶ 56.[3]

---

[3]Plaintiff contends that the Defendants discriminated against her by:

6

The Amended Complaint, like the original Complaint, raises three causes of action. The first alleges a Violation of the Fair Housing Act. Plaintiff alleges that "[t]he YWCA exposed me to hostile environment harassment from September 26, 2016 (to present) following a death threat from my spouse[.]." Id. at ¶ 59. YWCA Senior Administrator Lauren Jarrad allegedly "discouraged" Plaintiff from remaining in the apartment for 20 months but then informed Plaintiff in January 2018 that remaining in the apartment would require her to "deal with" Melissa Loeber. Id. Plaintiff claims this conduct violates the Fair Housing Act "by impermissibly requiring acceptance of a third party's harassment and discrimination . . . as a condition" of continued residence in the building. Id. Plaintiff contends that this conduct violates 24 C.F.R. § 100.7, which assigns a housing provider vicarious liability for the conduct of its employees and agents or third parties over which the Defendant has control. Id. at ¶ 61(a). Plaintiff further contends that the YWCA's conduct in attempting to evict her violates the prohibitions on discrimination in the sale or rental of housing in 42 U.S.C. § 3604. Id. at ¶ 62(b). Plaintiff contends she is entitled to injunctive relief from this conduct. Id. at ¶ 63. She also seeks damages. Id. at ¶ 64.

---

(a) . . . cutting off communicating with me after a meeting on October 2nd, 2017 for three months and threatening to discharge me from the program and after that period allowing only periodic contact.

(b) On the morning of October 2, 2018, Lauren Jarrard sent me an email in her capacity as the Director of Women and Family services, Jarrad threatened me with a discharge from the program for refusing to meet with them to discuss the death threat. Ms. Jarrad knew I cited challenges with my disability following the death threat on September 25, 2018 and had requested time to regroup from the trauma of the event and their aggressive efforts to remove my housing in collaboration with Melissa Loeber of Dozer Blaze Properties LLC. The defendants knew of my documented disability but chose to ignore my request.

Amended Complt. at ¶ 57.

7

Plaintiff's second cause of action seeks relief under the housing portion of the VAWA, 34 U.S.C. § 1249. Plaintiff claims that both Defendants violated the act by attempting to have her evicted and refusing to renew her lease when she received a death threat from a former spouse. Id. at ¶¶ 68-69. Plaintiff seeks an injunction prohibiting Defendants from engaging in discriminatory practices. Id. at ¶ 70. She also seeks damages. Id. at ¶ 71.

Plaintiff's third cause of action alleges that the YWCA administrators violated the confidentiality provisions of the VAWA, 34 U.S.C. § 12291(b)(2). Plaintiff alleges that the YWCA administrators provided Loeber with confidential information in an effort "to push me out of my home[.]" Id. at ¶ 77. Sharing that information led to harassing conduct from Loeber, which "triggered severe anxiety, psychoneuroimmunological conditions, and an eating disorder." Id. Plaintiff seeks injunctive relief and damages for this conduct. Id. at ¶¶ 78-79. Plaintiff also seeks declaratory relief that finds her eviction invalid and unenforceable, as well as "any matters or actions brought against me by the Defendants." Id. at ¶¶ 82-84. The Amended Complaint also seeks to have the Court enjoin Defendant Dozer Blaze from "enforc[ing] their contrived notice that the property could not be renewed due to repairs." Id. at ¶ 85. Plaintiff further requests an injunction "barring Defendant YWCA of Northeastern NY . . . from taking any actions to evict" Plaintiff "based on their notice on 7/25/2018 stating that I was non-compliant; the termination of my subsidy, and removal from the Rosa's House Supportive Housing Program." Id. at ¶ 86. Plaintiff also seeks damages, attorneys fees, and costs. Id. at ¶¶ 87-88.

**II.**  **Legal Standard**

8

Defendants filed motions to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). When, as here, the Plaintiff proceeds *pro se*, the Court "'construe [the complaint] broadly, and interprets [it] to raise the strongest arguments that [it] suggests.'" Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)). "This is especially true when dealing with pro se complaints alleging civil rights violations." Id. Plaintiff did not respond to the motion. Since "no response was necessary" to a 12(b)(6) motion to dismiss, the Court will apply the appropriate legal standard and determine whether Plaintiff's Amended Complaint states a claim upon which relief could be granted. Maggette v. Dalsheim, 709 F.2d 800, 802 (2d Cir. 1983).

### III. Analysis

#### A. Motion of Defendant YWCA

Defendant YWCA of Northeastern New York filed a motion to dismiss, raising several grounds, which the Court will address in turn.

##### i. Injunctive Relief

9

Defendant first argues that the Court should dismiss any claim for injunctive relief. Plaintiff has now been evicted from the apartment and thus any injunctive relief is moot and unavailable. Moreover, the injunctive relief she seeks–a Court order barring or reversing the state-court order evicting her–is unavailable due to the anti-injunction act, the Rooker-Feldman doctrine, and Younger abstention.

The Court will grant the motion in this respect. The Court has already determined that injunctive relief is unavailable to the Plaintiff under these circumstances. See dkt. #s 6, 8. The Court stands on those decisions and notes that any injunction at this point would amount to a review over a final the state-court decision and is not permitted under the Rooker-Feldman doctrine, which establishes that lower federal courts have no jurisdiction over challenges to final state-court decisions. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); see also Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

### ii. FHA Claims

Defendant next argues that the Court should dismiss Plaintiff's Federal Housing Act claims against the YWCA. Defendant contends that Plaintiff attempts to assert vicarious liability against the YWCA, but that Plaintiff has not and could not allege that Dozer Blaze acted as the YWCA's agent under the circumstances. In any case, Defendant claims, the YWCA was not the landlord and not the owner of the property, and therefore cannot be subject to the liability under the FHA. As such, Defendant contends, the claim should be dismissed.

Under the Fair Housing Act, "property owners and their agents may not 'unlawfully

10

discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling.'" Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003) (quoting 42 U.S.C. § 3604(b)). The aim of the Act is "'to eliminate all traces of discrimination within the housing field.'" Francis v. Kings Park Manor, Inc., 944 F.3d 370, 376 (2d Cir. 2019). "The language of the FHA has a 'broad and inclusive compass,' and [courts] therefore give it a 'generous construction.'" Id. (quoting, in turn, City of Edmonds v .Oxford House, Inc., 514 U.S. 725, 731 (1995); and Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 212 (1972)). The act applies as well to "so-called 'post-acquisition' claims that arise from intentional discrimination that occurs after a party occupies the property. Id. The Act regulates "conduct that . . . 'would constitute discrimination in the enjoyment of residence in dwelling or in the provision of services associated with that dwelling' after acquisition." Id. at 377.

Defendant contends that it cannot be liable under the FHA because Dozer Blaze, not the YWCA, was the landlord of the property. Plaintiff alleges, and Dozer Blaze admits in its briefing (see dkt. # 30-1), that the YWCA leased the apartment in question from Dozer Blaze and then sublet the apartment to the Plaintiff. See Amend. Complt. at ¶ 1. Dozer Blaze brought the eviction proceeding in the Schenectady County Court, naming both Plaintiff and the YWCA as Defendants. See dkt. # 29. Under the FHA, however, "'[t]o rent' includes to lease, to sublease, to let and otherwise grant for consideration the right to occupy premises not owned by the occupant." 42 U.S.C. § 3602(e). To the extent that the YWCA sublet the property to Plaintiff and engaged in discriminatory activity, then, the YWCA could be liable under the FHA. Making all inferences in the Plaintiff's favor, the Court cannot grant the motion on this basis.

Still, the discriminatory and harassing conduct that Plaintiff allegedly faced did not

11

come from the YWCA or the YWCA's employees. While Plaintiff complains that Melissa Loeber's conduct harassed her, she also admits that Defendant Dozer Baze, and not the YWCA, employed Loeber. The question, therefore, becomes whether the YWCA can be liable for Loeber's conduct. Courts have permitted vicarious liability for FHA violations. Courts use federal agency law to determine whether vicarious liability exists. Cleveland v. Caplaw Enters., 448 F.3d 518, 522 (2d Cir. 2006) (citing Cabrera v. Jakabovitz, 24 F.3d 372, 386 n.13 (2d Cir. 1994)). "Agency is a legal concept that depends on the existence of three elements: (1) 'the manifestation by the principal that the agent shall act for him'; (2) 'the agent's acceptance of the undertaking'; *and* (3) 'the understanding of the parties that the principal is to be in control of the undertaking.'" Id. (quoting Restatement (Second) of Agency § 1cmt.b (1958)). Determining agency, however, is a "highly factual" endeavor. Id. Courts rely "on a number of factors, including:

> the situation of the parties, their relations to one another, and the business in which they are engaged; the general usages of the business in question and the purported principal's methods; the nature of the subject matters and the circumstances which the business is done.

Id. (quoting Columbia Broad. Sys., Inc.v. Stokely-Van Camp, Inc., 522 F.2d 369, 375-76 (2d Cir. 1975)). "'[T]he right of control by the principal may be exercised by prescribing what the agent shall or shall not do before the agent acts, or at the time when he acts, or at both times.'" Id. (quoting Restatement (Second) of Agency § 14 cmt. a). A principal need not control all conduct, that control need not be continuous, and can even be "'ineffective'" when the principal "'is physically absent.'" Id. (quoting Restatement (Second) of Agency at § 14 cmt. a).

As a threshold question, therefore, the Court must decide whether Plaintiff has

12

alleged that an agency relationship existed between Loeber and the YWCA. The Court finds that Plaintiff has not alleged such a relationship. Plaintiff admits that the YWCA "rents" properties from Dozer Blaze. Amended Complt. at ¶ 1. She claims YWCA officials allowed "Loeber to act as an enforcer for the YWCA." Id. at ¶ 6. She further alleges that a YWCA official, Lauren Jarrard, emailed her in January 2019 to say "she was sorry for my suffering but if I remained in my apartment I would continue to be subjected to Ms. Loeber." Id. When Plaintiff reported Loeber's conduct to the YWCA, "they advocated for Melissa Loeber stating that I was residing in the apartment illegally without a lease, and as a result, the landlord could not receive funds for the dwelling. Lauren Jarrard justified Melissa Loeber['s] actions stating the apartment was Loeber's property." Id. at ¶ 7. All of this indicates that Loeber did not serve as the YWCA's agent, but instead operated independently and in the interests of Defendant Dozer Blaze. Since Plaintiff has alleged only agency liability against the YWCA, the Court finds that the Defendant's motion should be granted in this respect.[4]

Given that Plaintiff is proceeding *pro se*, however, and because she has alleged that the YWCA sublet her the apartment, she may be able to allege facts that would give rise to a FHA claim against the YWCA for its own employees' acts of discrimination.[5] The Court will therefore permit Plaintiff to re-plead any FHA claims that she may have against the YWCA for such discrimination. Plaintiff should keep in mind, however, the standard

---

[4] The Court also agrees with the Defendant that, to the extent that Plaintiff seeks recovery of damages for losing benefits from HUD, her remedy is not an FHA claim, but an action involving HUD.

[5] The Court declines to determine whether qualified immunity applies under the circumstances.

13

explained below. She must allege facts sufficient to make it plausible that a discriminatory motivate lay behind the Defendant's conduct.

### iii. VAWA Act Claims

The Defendant next seeks dismissal of Plaintiff's claim that the YWCA violated her rights under the Violence Against Women Act by seeking to have her evicted from her apartment. Plaintiff cannot raise such a claim, Defendant argues, because the YWCA did not attempt to evict her, and instead sought to help her find housing. Defendant likewise argues that Plaintiff cannot raise a claim under the VAWA for disclosing confidential information.

The Court finds that there is separate, independent, and dispositive reason to dismiss both of Plaintiff's claims under the Violence Against Women Act. Courts have concluded that "there is no private civil remedy under VAWA." Esposito v. New York, 453 Fed. Appx. 37, 39 (2d Cir. 2011) (citing United States v Morrison, 529 U.S. 598 (2000) (finding the private civil remedy under the VAWA unconstitutional). Because Plaintiff cannot bring such a claim, those causes of action must be dismissed with prejudice.

### B. Defendant Dozer Blaze

Defendant Dozer Blaze also seeks dismissal of Plaintiff's claims. For the reasons stated above concerning the lack of a private remedy under the VAWA and the Plaintiff's inability to obtain injunctive relief, the Court will grant the motion with respect to those claims without further discussion. The only question that remains, therefore, is whether Plaintiff has stated a claim that Dozer Blaze violated the FHA.

### i. FHA Claims

Defendant first argues that Plaintiff has failed to state a claim because she has not alleged that Dozer Blaze discriminated against her because of any protected category: race, color, religion, sex, disability, familial statute, and/or national origin. While Defendant admits that Plaintiff has alleged that she suffers from a disability–post-traumatic stress disorder ("PTSD")–Defendant has not connected her eviction to any animus Defendant had to Plaintiff because of that disability. Courts evaluating a discrimination claim under the FHA employ the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003) ("We evaluate claims of housing discrimination under the *McDonnell Douglas* burden-shifting framework."). "Pursuant to that framework, once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to assert a legitimate, nondiscriminatory rationale for the challenged decision." Palmer v. Mae, 755 Fed. Appx. 43, 46 (2d Cir. 2018). At this stage in the proceedings, however, "'a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas* at least as the test was originally formulated, to defeat a motion to dismiss.'" Id. (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015)). A plaintiff "can survive a motion to dismiss" by "alleg[ing] facts that support a plausible claim that the plaintiff was 'a member of a protected class,' suffered relevant 'adverse' treatment, and 'can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.'" Id. (quoting Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original)). At this stage, "'a plaintiff need only give plausible support to a minimal inference of discriminatory motivation[.]'" Id. (quoting Vega, 802 F.3d at 84)).

The Court finds that Plaintiff has failed to plead facts sufficient to provide even a

15

minimal inference of discriminatory motivation in Defendant's conduct. While Plaintiff alleges reprehensible conduct on Loeber's part, she alleges no facts which would make it plausible that discrimination because of Plaintiff's alleged disability motivated Plaintiff's action. The Court will therefore grant the Defendant's motion to dismiss in this respect. Because Plaintiff proceeds *pro se*, however, and because Plaintiff may be able to plead facts which suggest a discriminatory motive to Loeber's conduct, the Court will grant the motion without prejudice to plaintiff re-pleading such a claim.

Defendant also argues that Plaintiff's hostile living environment claim should also be dismissed. First, Defendant asserts that Plaintiff has not alleged that Dozer Blaze had authority over the "terms, conditions, or privileges of sale or rental" of the apartment. Instead, Dozer Blaze claims, Plaintiff has alleged that the YWCA had such control. Even if Plaintiff could allege that Dozer Blaze had such control, Defendant contends that she has not alleged that any harassment came because of Plaintiff's membership in a protected class. Finally, Defendant contends that Plaintiff has not alleged the sort of pervasive or severe conduct that would give rise to a hostile environment claim.

"District courts in this Circuit have held that a plaintiff bringing a post-acquisition hostile housing environment claims under Section 3617 must prove (1) that he or she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile housing environment; (2) that the harassment was because of the plaintiff's membership in a protected class; and (3) that a basis exists for imputing the allegedly harassing conduct to the landlord or property manager." A.L.M. v. Bd. of Managers of the Vireum Schoolhouse Condo., No. 17cv7385, 2019 U.S. Dist. LEXIS 129465, *24 (S.D.N.Y. Aug. 2, 2019); citing Pierre v. Lantern Grp. Found., Inc., 14cv8449, 2016 US Dist. LEXIS

16

80079, 2016 WL 3461309 at *2 (S.D.N.Y. June 20, 2016); D.K. by L.K. v. Teams, 260 F.Supp.3d 334, 367 (S.D.N.Y. 2017); Cain v. Rambert, 2014 U.S. Dist. LEXIS 74188, 2014 WL 2440596 at *5 (E.D.N.Y. May 30, 2014)).

The Court will grant the Defendant's motion in this respect. Even providing Plaintiff's Amended Complaint with the consideration due a *pro se* pleading and making all inferences in her favor, the Court cannot find that Plaintiff has plausibly alleged that the harassment Plaintiff allegedly faced from Loeber amounted to harassment because of her PTSD or membership in some other protected class. While the allegations listed above may constitute severe and pervasive conduct on Loeber's part, Plaintiff has not connected a discriminatory animus to that conduct sufficient to meet the pleading standard.[6] The Court will also grant the motion to dismiss on that basis.

As with the YWCA, the Court will grant the Plaintiff's motion without prejudice to re-pleading in this respect. The Plaintiff has alleged membership in a protected class, and she may be able to allege discrimination related to that membership.

## IV. CONCLUSION

For the reasons stated above, the Court will GRANT the Defendants' motions to dismiss, dkt #s 18, 30. The motions are GRANTED WITH PREJUDICE with respect to any claims under the Violence Against Women Act and any attempts to obtain injunctive relief. The motions are GRANTED without prejudice with respect to Plaintiff's claims

---

[6] The Court is unable to conclude that Plaintiff has not–as Defendant claims–alleged that Dozer Blaze did not control the terms and conditions of Plaintiff's housing. As explained above, the Amended Complaint is not entirely clear about the arrangements between the YWCA and Dozer Blaze. If Plaintiff chooses to re-plead her allegations, she should make clear the relationship between the Defendants and the nature of her lease at the relevant times.

under the Fair Housing Act.  Plaintiff must file any amended complaint within thirty (30) days of the date of this Order.   Failure to file an Amended Complaint within that time will cause the Court to consider the matter dismissed with prejudice.  Plaintiff is advised that <u>an amended complaint **supersedes in all respects** the prior pleading.   Therefore, if the Plaintiff files an amended complaint she **must properly allege the claims for which leave to re-plead has been granted**</u> by this Decision and Order.

**IT IS SO ORDERED.**

**DATED**: February 12, 2020

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge